UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| NOSTRUM PHARMACEUTICALS, LLC, | ) | |
| et al., | ) | |
| | ) | Case No. 15-mc-218 |
| Plaintiffs, | ) | |
| | ) | Case No. 13 Civ. 8718 (CM)(AJP) |
| vs. | ) | (United States District Court |
| | ) | for the Southern District of |
| MANESH DIXIT, PH.D., | ) | New York) |
| | ) | |
| Defendant. | ) | |

MOTION FOR PROTECTIVE ORDER AND SUPPORTING SUGGESTIONS

COME NOW, non-parties, Liberty Pharma, Inc., Larry Patel and Harish Gosike, pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 26(c), and move this Court to enter a protective order with respect to the subpoenas issued to each of them. Copies of the subpoenas are attached hereto as Exhibits 1-3.The subpoenas requested of each of the non-parties that they produce certain documents which contain trade secrets, intellectual property and/or confidential business and proprietary information. Additionally the subpoena to Liberty Pharma requires it to produce a corporate representative to testify on matters involving trade secrets, intellectual property and/or confidential business and proprietary information.

BACKGROUND

In or about December 2013, plaintiffs Nostrum Pharmaceuticals, LLC ("NPLLC") and Nostrum Laboratories, Inc. ("NCI") filed suit against defendant Manesh Dixit ("Dixit") in the United States District Court for Southern District of New York (Case No. 1:13 CV-08718-CM-AJP). Plaintiffs allege that Dixit improperly created and operated a pharmaceutical company both during and after his employment as an executive officer for plaintiffs (a) in competition with plaintiffs' pharmaceutical business, (b) using trade secrets, intellectual property and

corporate opportunities allegedly stolen from plaintiffs and (c) in breach of his fiduciary duties owed to plaintiffs. Plaintiffs allege that defendant violated his non-competition, confidentiality and non-solicitation agreements with plaintiffs and misappropriated and used plaintiffs' trade secrets and other confidential information in connection with his new business First Time Generics. (*See* Second Amended and First Supplemental Complaint (hereinafter "Complaint") (*See* Ex. A to Ex. 1).

Each of the movants has been subpoenaed to give a deposition and produce a long list of documents at their respective depositions. Additionally the subpoena to Liberty Pharma contains a list of twenty topics on which Liberty Pharma is asked to put up a corporate representative to testify about pursuant to Fed.R.Civ.P. Rule 30(b)(6).

Movants are not parties to this litigation. Movant Liberty Pharma is a Delaware corporation with its principal place of business in Liberty, Missouri. Liberty Pharma, Inc. was incorporated in or about September, 2013. (Ex. 4, Declaration of H. Gosike, ¶ 3) It is intended that Liberty Pharma will be a contracting analytical lab, but the lab is not currently commercially operational. (Gosike Declaration, ¶ 5) Liberty Pharma has no subsidiaries, parent or affiliate companies. (See Gosike Declaration, ¶ 4) Movant Harish Gosike is employed by Liberty Pharma as a Chemist and Director of Operations and Quality Control. (Gosike Declaration ¶ 2) Movant Larry Patel was at one time an officer and director of Liberty Pharma. Movant's current role is that of a lender of funds to Liberty Pharma. (Gosike Declaration, ¶ 6)

Defendant Dixit is the sole member of First Time Generics. At one time, movant Patel was also a member of First Time Generics, LLC but his current role is only that of lender.

2

The development of pharmaceutical drug products is a lengthy and very expensive process. In the United Sates after the Food and Drug Administration (FDA) approves a new brand name drug, the manufacturer of that drug has an exclusive market for a long period of time. During that exclusivity period, no generic version of the brand name drug may be sold in the United States. During the time period when the brand name drug has exclusivity, other companies may attempt to develop a generic version of the drug, so that when the brand name drug loses its exclusivity rights, those companies are ready to apply to the FDA for approval of a generic drug. (Gosike's Declaration, ¶¶ 7-9)

Generic pharmaceutical companies spend long periods of time and much money developing new generic drugs, and the manufacture process for each. In addition they spend great time and money on testing and safety and effectiveness and quality control. As a result, pharmaceutical companies closely guard information relating to their generic drug products. (Gosike Declaration ¶ 9) The FDA makes available to the public the date when a brand name drug will lose its exclusive rights. (Gosike Declaration, ¶ 13) As soon as the brand name drug loses its exclusivity, the FDA accepts applications – known as Abbreviated New Drug Applications (ANDAs) from generic pharmaceutical companies. (Gosike Declaration, ¶ 11) The time period from submission of the ANDA to approval of the drug is generally takes several years. (Gosike Declaration ¶ 17) The FDA provides six months market exclusivity to the first to file accepted generic applications. (Gosike Declaration, ¶ 15) Therefore generic pharmaceutical companies have a strong economic incentive to be the first to file ANDAs on a generic version of a name brand drug(Gosike Declaration ¶ 16) As part of the ANDA process, much technical, proprietary and trade secret information (often thousands of pages), including but not limited to

3

the components and formulas of the generic drugs as well as manufacturing processes, quality control and safety and effectiveness testing results is submitted to the FDA. (Gosike Declaration, ¶ 18)

First Time Generics entered into agreements with Indian companies which have developed certain generic drugs which the companies hope to get approved for use in the United States. First Time Generics agreed to assist these Indian companies through the FDA regulatory process of filing ANDAs and to handle any ensuing patent litigation in United States Courts. The agreements between First Time Generics and the Indian companies include confidentiality agreements and nondisclosure agreements. (Gosike Declaration, ¶ 23) In this matter, ANDAs have been submitted seeking approval for generic versions of brand name drugs whose manufacturers lost their exclusive rights to manufacture and sell the drugs in the United States.

In or about October 2014, Liberty Pharma acquired three ANDAs from First Time Generics, LLC. (Gosike Declaration, ¶ 20) The three ANDAs relate to generic drugs which were created by Indian companies – Centaur Pharmaceuticals Pvt. Ltd. and Windlas Healthcare Private Limited. All of the technical information, trade secret and intellectual property regarding the drugs are owned by Centaur and Windlas and are subject to Confidentiality Agreements and Non-Disclosure Agreements (Gosike Declaration, ¶¶ 21-23) On occasion, Liberty Pharma communications with the Indian companies about the drugs. (Gosike Declaration, ¶ 24) Those communications are subject to the above-referenced confidentiality and nondisclosure agreements.

The three ANDAs mentioned above have been accepted by the Food and Drug Administration (FDA), but the FDA has not yet approved the applications and the related patent

infringement claims are still being litigated. (Gosike Declaration ¶ 25) Most of the ANDA materials and the submissions to the FDA are highly confidential and are not publicly available during the FDA process. (Gosike Declaration, ¶ 26) Communications with the FDA and/or Indian companies which developed the generic drugs regarding the ANDAs generally involve matters of trade secrets and/or confidential research development or commercial information.

<u>The District Court of Kansas is the appropriate court for filing this Motion for Protective Order.</u>

Although the corporate movant has no offices in Kansas and none of the three movants is a citizen of Kansas, plaintiffs noticed up the depositions to take place in Overland Park, Kansas. Thus pursuant to the Federal Rules of Civil Procedure, compliance with the subpoena is to occur in Overland Park, Kansas and therefore the United States District Court for the District of Kansas is the court where this Motion for Protective Order must be filed. (Fed.R.Civ.P. Rule 26(c)(1) and Rule 45 (d)(3)).

Fed.R.Civ.P. Rule 26(c) provides in relevant part:
(C) Protective Orders
(i) *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending – or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including one or more of the following:
(a) forbidding the disclosure or discovery;
***

(d) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

\*\*\*

(g) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way;

The subpoenas served on movants stated the depositions were to take place on July 2 and 3. Initially counsel for movants anticipated filing a Motion to Quash. Counsel for movants conferred on multiple occasions and at length with counsel for plaintiffs regarding movants' concerns and objections to the three subpoenas. Various proposals were discussed by counsel and ultimately counsel agreed that the depositions would take place on July 22 and 23, that movants would produce documents to plaintiffs' counsel prior to the depositions, to wit: on or before July 18, and would also file their objections to the subpoenas and motion for protective order on or before July 18. (*See* Ex. 5 hereto) In accordance with the above-referenced agreement, movants are producing certain documents to plaintiffs' counsel and are filing their separate objections to the subpoenas and this motion on July 17th. Movants intend to give their depositions on July 22 and 23 on matters that do not involve disclosing trade secrets or confidential business or proprietary information. Movants believe a protective order is needed with respect to certain documents and subjects requested in the subpoenas.

Movants acknowledge that a stipulated protective order regarding confidentiality of documents and other information produced in discovery has been entered in the New York case. (*See* Exhibit 6 hereto.) However, movants are unwilling to sign that protective order or produce any documents pursuant to that protective order because it includes provisions stating it will be

6

interpreted in accordance with New York law and that the United States District Court for the Southern District of New York will have jurisdiction regarding any proceeding to enforce the terms and conditions of the stipulation. Movants have no connection with New York and it would be burdensome to movants to have to litigate in the Southern District of New York should an issue arise regarding that protective order or any document or information subject to it.

**Certain of the Subjects and Documents involve proprietary or confidential business information or trade secrets and/or contain intellectual property**

Rule 25(c)(1)(i)(g) provides that the court can enter a protective order requiring that a trade secret or "other confidential research, development or commercial information" not be revealed or be revealed in specified ways. The Federal Rules do not define the terms "trade secret" or "confidential research, development, or commercial information", which are contained in FRCP Rule 26(C)(i)(g). However, case law has defined them to mean "information, which if disclosed would cause substantial economic harm to the competitive position of the entity from whom the information was obtained*." In re S3 LTD*, 242 B.R. 872, 876 (Bank. E.D. VA 1999)(quoting *Diamond States Ins. Co. v. Rebel Oil Co*, 157 F.R.D. 691, 697 (D. Nev. 1994)).

The FDA is generally barred by its regulations from releasing any information about a drug application prior to its approval. 21 C.F.R. §314.430. Numerous courts have recognized that ANDAs contain trade secrets, the disclosure of which to a competitor or the public would be extremely damaging to the discloser. *See* e.g. *Biovail Labs, Inc. v. Anchen Pharms., Inc.*, 463 F.Supp.2d 1073, 1083(C.D.Cal. 2006), *Appleton v. Food & Drug Admin.*, 451 F.Supp.2d 129, 141(D.D.C. 2006) (holding that documents containing information consisting of drug product

manufacturing information, manufacturing processes, and/or drug chemical composition and specifications constitute trade secrets). Courts have recognized that a drug application to the FDA by definition contains trade secrets information because it contains significant information about how drug is formulated, chemically composed, manufactured and quality controlled. *Biovail Labs, Inc., supra*, citing to Citizen *Comm'n on Human Rights v. Food & Drug Admin.*, 1993 U.S. Dist. LEXIS 21369, 1993 WL 1610471, *7 (C.D.C. 1993); *aff'd in part and remanded in part on other grounds*, 415 F.3d 1325(9th Cir. 1996). *See* also *Andrx Pharms., LLC v. GlaxoSmith Kline, plc*, 236 F.R.D. 583, 586 (S.D.Fla 2006) (courts provide "heavy cloak" of judicial protection because of the possibility of serious economic harm to the disclosure of scientific information); *see* also *Serono Lab & Shalala*, 35 F.Supp.2d 1, 2 (D.DC. 1999) (Court recognized that pharmaceutical industry is competitive and technical and that its members – "justifiably hoard their trade secrets as jealously as a miser hoards his gold.")

Plaintiffs seek both information and documents regarding the trade secrets and confidential and proprietary information regarding generic drugs owned by the Indian companies and regarding those drugs subject to the ANDAs. (*See* e.g. Ex. 1, Liberty Pharma Subpoena, Subjects 5, 7,8, 11, 19, Requests 5,6,7,8,11,20, 24, 25, 26, 27; Ex. 2, Patel Subpoena Requests 5, 7, 8, 11, 20, 24, 26, and 27; and Ex. 3, Gosike Subpoena Requests 4, 6, 7, 9, 18, 19, and 20) In the instant case, information about the generic drugs developed by various Indian companies is highly proprietary and confidential. Having acquired the ANDAs from First Time Generics Liberty Pharma has obligated itself to comply with the nondisclosure and confidentiality agreements originally entered into between First Time Generics and Centaur and/or Windlas and not disclose any trade secrets or confidential research, development or commercial litigation of

these companies. (Gosike Declaration, ¶ 24). The trade secrets and confidential information derive actual and potential economic value from the fact that they are not generally known or readily accessible to the public or others, especially competitors. If trade secrets or confidential information regarding the generic drug product is disclosed then it would cause economic harm to both Liberty Pharma and the Indian companies who developed and who have agreed to manufacture the generic drugs once FDA approves the ANDAs. (Gosike Declaration ¶¶ 27-28)

Plaintiff is also a generic pharmaceutical company and submits ANDAs for generic drugs. Therefore Nostrum is a competitor. If the trade secrets, intellectual property, confidential and proprietary information of Centaur and/or Windlas are revealed, then plaintiff or another generic drug company will be able to use that information to create their own generic drug (undoubtedly for less cost and much less time) and to compete with the drug(s) developed by Windlas and/or Centaur and/or which are the subject of the ANDAs. (Gosike Declaration ¶ 27)

Additionally, Liberty Pharma and First Time Generics have entered into a confidentiality agreement to protect confidential and proprietary information which either might disclose to the other with respect to their existing or prospective business relationships. First Time Generics and/or Liberty Pharma have an interest in protecting whatever trade secrets and/or confidential research development and/or commercial litigation exist regarding their respective businesses. Liberty Pharma and/or First Time Generics would experience economic harm if potential competitors, including plaintiffs, knew what projects or generic drug products they were involved with or considering getting involved with. Competitors could use that information to pursue similar or identical products or projects and could undermine Liberty Pharma's or First Time Generics' relationship with actual or potential clients. (Gosike Declaration ¶¶ 29-30)

9

Certificate of Conference

Mimi E. Doherty and/or Spencer J. Brown, counsel for movants, had numerous lengthy telephone conversations with Carlton Asher, counsel for plaintiffs on multiple occasions including June 19, 24, 25 and 26, 2015 in a good faith attempt to resolve the dispute concerning the Subpoena that is the subject of this motion. While counsel were able to resolve some of their disputes regarding the subpoenas as of the time this motion filed, the issues set forth herein have not been resolved.

Conclusion

For the above and foregoing reasons, movants Liberty Pharma, Harish Gosike, and Larry Patel respectfully requests that the Court enter a protective order holding that movants are not required to testify about or produce any confidential business or proprietary information or any trade secrets or intellectual property.

DEACY & DEACY, LLP

 /s/ Mimi E. Doherty
Spencer J. Brown         #70366
Mimi E. Doherty         KS #15613
920 Main Street, Suite 1900
Kansas City, MO 64105-2010
Telephone: (816) 421-4000
Facsimile: (816) 421-7880
sjb@deacylaw.com
med@deacylaw.com
ATTORNEYS FOR LARRY PATEL
AND LIBERTY PHARMA, INC.
AND HARISH GOSIKE

10

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on July 17, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and I emailed a copy to the following:

Bruce Regenstreich, Esq.
310 Greenwich Street, Apt 27C
New York, NY 10013
Tel: (908) 347-8999
regenstreich@gmail.com

Carlton R. Asher, Jr., Esq.
Law Offices of Carlton R. Asher, Jr.
110 East 59th Street, Suite 2200
New York, NY 10022
asherlaw@att.net

Bridgette Y. Ahn, Esq.
Law Office of Bridgette Ahn
244 Fifth Avenue, #2224
New York, NY 10022
Tel: (212) 537-4409
bahn@bahnlaw.com

Tammy M. Somogye, Esq.
Lathrop & Gage, LLP
10851 Mastin Boulevard, Building 82, Suite 1000
Overland Park, KS 66201
Tel: (913) 451-5106
tsomogye@lathropgage.com

ATTORNEYS FOR PLAINTIFFS

Neal A. DeYoung, Esq.
SHARMA & DEYOUNG, LLP
555 Fifth Avenue, 17th Floor
New York, NY 10017
Tel: (212) 856-7236
neal@sharmadeyoung.com
ATTORNEYS FOR DEFENDANT
MANESH DIXIT

   /s/ Mimi E. Doherty_____
Attorney For Movants